[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this marital dissolution action, the parties have an agreed parenting plan, but they are in dispute concerning support, alimony, the distribution of assets, and the payment of fees. Based on the evidence adduced at trial, the court makes the following findings and orders.
The parties were married on December 6, 1986 in Newington, Connecticut. They have one child, Russell Hunter Steinberg, who was born on March 7, 1990.
At the commencement of trial, the parties submitted a written stipulation in which they stated that they have been separated since October, 1994, and that they have successfully shared the physical custody of Russell without the necessity of court intervention. Both seek an order of joint legal and physical custody. This arrangement has worked well for Russell and for his parents. The court commends the parties for having separated their financial dispute from Russell, and for insulating Russell from this litigation process. Continuing physical and legal joint custody by the parties is in Russell's best interest. Accordingly, joint physical and legal custody of Russell is awarded to both parties. They shall consult with one another concerning Russell's ongoing educational, health, religious, and significant developmental needs, and neither shall move from the town of Farmington without first giving the other ninety days advance notice of his or her intention to do so. In order to effectuate the terms of their joint physical custody, the parties shall prepare a parenting plan once every six months, on July 1st and January 1st. This parenting plan will include agreement on Russell's residence for the coming six months, his holiday schedule, and any significant events to take place during the ensuing six months. All of this will be noted on a calendar which shall then be prominently displayed in each parent's household for the parties' and Russell's ready reference.
The parties have stipulated that their marriage has broken down irretrievably. Based on the facts adduced at the hearing, the court concurs. Accordingly, a decree may enter dissolving the marriage on the basis of it's irretrievable breakdown. CT Page 6594
Ms. Goodman resides on Lilac Lane in Farmington, a residence purchased in conjunction with the parties' separation. She is forty-one years old and has a four year undergraduate degree and a masters degree in administration and supervision relating to special education. Ms. Goodman works for Key Service Systems, earning approximately thirty-seven thousand, two hundred ($37,200) dollars annually teaching children with special needs in their homes. She has been employed outside her home throughout the marriage except for a brief period of time following Russell's birth. The pendency of this action and the lack of resolution of financial issues between the parties has been difficult for Ms. Goodman emotionally, and has caused some periodic skin reddening, swelling, and itching for which she must take medication. Thus far, however, her symptoms have not interfered with her employment. Apart from this condition, Ms. Goodman is in good health.
Mr. Steinberg resides on Indian Hill Road, Farmington, in the former family residence. He is forty-seven years old and in good health. He has a Bachelor of Fine Arts degree from the University of Connecticut. Mr. Steinberg is employed as the director of Pooh's Corner, a day care facility located on Avon Road in Avon. He started this business in 1976, and bought the building which houses the day care center in 1980. His affidavit reflects that he has annual gross earnings of approximately forty thousand, five hundred ($40,500) dollars from this employment. In addition, he indicates that he receives annual rent of approximately thirty one thousand, six hundred ($31,600) dollars from the building which houses Pooh's, and he gives music lessons for which he earns less than one thousand ($1000) dollars a year. During the course of the marriage, Mr. Steinberg also served as Director of the Hartford Symphony for which he received a small salary. While there was some dispute concerning whether Pooh's Corner presently requires a full-time director, the court finds that this is, in fact, a full-time position.
Between them, the parties own several pieces of real estate. In 1986, prior to the marriage, Ms. Goodman purchased a condo on Woodsedge Drive in Newington for fifty-nine thousand ($59,000) dollars. She contributed between fifteen and sixteen thousand ($15,000-$16,000) dollars toward the down payment, financing the balance with a mortgage of approximately forty-four thousand ($44,000) dollars. The balance of this mortgage was subsequently paid-off by a refinancing of the Indian Hill property. Later, CT Page 6595 however, the equity in this property was utilized to generate a loan of approximately thirty-seven thousand, five hundred ($37,500) dollars in conjunction with the purchase of the Lilac Hill property. Presently, the Woodsedge Drive property has a fair market value of forty thousand ($40,000) dollars and a mortgage of approximately thirty-two thousand ($32,000) dollars. Though Ms. Goodman leases this property, the rental payments do not generate positive cash flow. They do, however, cover most or the expenses of ownership.
The plaintiff purchased the residence on Lilac Lane in September, 1994 in conjunction with the parties' impending separation. While the title of this property is in both parties' names, they agree that it should be owned solely by the plaintiff. This property is located nearby the Indian Hill property, thus facilitating Russell's transitions from one parent to the other. The property was purchased for one hundred and eighteen thousand ($118,000) dollars, with a mortgage of approximately eighty-two thousand ($82,000) dollars. The down payment for this purchase, approximately thirty-seven thousand, five hundred ($37,500) dollars, was obtained by refinancing the Woodsedge condo. This property has a present fair market value equal to its original purchase price and a mortgage balance of approximately eighty-one thousand ($81,000) dollars.
Prior to the marriage, the defendant purchased the residence at 33 Indian Hill Road in Farmington for approximately two hundred seventy-six ($276,000) thousand dollars, including the costs of improvements. The present fair market value of this property is approximately two hundred, eighty thousand ($280,000) dollars. It has a mortgage balance of approximately one hundred and ninety-one thousand ($191,000) dollars. This property was originally purchased by Mr. Steinberg and his mother. The source of funds for the purchase of this property was as follows: seventy thousand ($70,000) dollars from Mr. Steinberg's mother; fifty thousand ($50,000) dollars from Mr. Steinberg; twenty-two thousand, five hundred ($22,500) dollars from Pooh's Corner, and; seven thousand, five hundred ($7,500) dollars from the West Hartford Credit Union. The balance was financed through a mortgage. Through a series of deeds, the ownership of this property is presently as follows: Mr. Steinberg-7/16th; Ms. Goodman-1/4th; Ms. Goodman as custodian for Russell-3/16th, and; Mr. Steinberg's mother-1/8th.
In April, 1994, the parties purchased a condo in Fort CT Page 6596 Lauderdale for fifty-five thousand ($55,000) dollars from the defendant's father. It is presently in joint names. This property, which is the winter residence of the defendant's mother, originally had a mortgage of thirty-two thousand ($32,000) dollars. It's present balance is approximately twenty seven thousand, nine hundred ($27,900) dollars. The down payment of approximately twenty-three thousand ($23,000) dollars came from Pooh's Corner by a combination of funds directly from the business and payment by the defendant's brother in an amount equal to the sum he then owed Pooh's Corner. Because of deed restrictions, this property can not be legally leased. At trial, the defendant acknowledged that he pays the expenses associated with this property for which he receives no payments from his mother.
The last real property owned by either of the parties is located at 40 West Avon Road in Avon. This is the Pooh's Corner facility. This property was purchased by Mr. Goodman in 1980 for approximately one hundred thousand ($100,000) dollars. By agreement of the parties, the property is found to have a present fair market value of two hundred thirty-five ($235,000) thousand dollars. The parties also agree that, because of the inflated real estate market in the mid nineteen-eighties, the property had a fair market value of approximately four hundred thousand ($400,000) dollars at the time of the marriage. Thus it has depreciated in value during the marriage. It is presently encumbered by a first mortgage with a balance of approximately thirty-seven thousand, six hundred ($37,600) dollars. Additionally, within the past three years, the defendant borrowed fifty thousand ($50,000) dollars for expenses associated with Pooh's Corner. This debt is also secured by the West Avon Road property.
Apart from real estate, each of the parties has some liquid assets. The plaintiff has a tax sheltered annuity with the Travelers valued at twelve hundred ($1,200) dollars as of December 31, 1997, a retirement account with the Phoenix worth four thousand, six hundred ($4,600) dollars, a retirement account with the Prudential valued at twenty one thousand ($21,000) dollars as of January 31, 1998, an IRA at the Farmington Savings Bank valued at forty-seven hundred ($4,700) dollars as of April 22, 1997, and a small Solomon Brothers account worth approximately nine hundred ($900) dollars as of December 31, 1997. Thus, the plaintiff has retirement assets totaling approximately thirty-two thousand, four hundred ($32,400) dollars. Essentially all of this was acquired during the marriage, though much of CT Page 6597 it since the parties' separation in 1994.
The defendant has an IRA at the Farmington Savings Bank worth approximately seventy-six hundred ($7,600) dollars, and a credit union account with a balance of approximately three thousand ($3,000) dollars.
The parties have a significant dispute concerning the business value of Pooh's Corner. Pooh's Corner is a Connecticut corporation which has been in the sole ownership of the defendant for approximately twenty years. It has twelve full time employees and a capacity of approximately seventy-four children at any one time. Presently, it serves approximately fifty-five to sixty-five children a day. When Pooh's first opened it was the only day care center in its vicinity. Now there are approximately thirteen centers within a five mile radius. While the parties agree that the real estate has a fair market value of two hundred, thirty-five thousand ($235,000) dollars, the defendant claims that the business itself has essentially no value, while the plaintiff claims that the business and real estate have a combined value of three hundred and sixty thousand ($360,000) dollars.
Each produced expert testimony on the subject. Timothy McCarthy, a certified public accountant who has no prior experience with Pooh's corner, viewed the real estate and business as one entity. Using a weighted average cash flow method of evaluation, and adjusting certain expenses downward, he determined that the business generates net income of approximately forty-one thousand ($41,000) dollars a year, and he concluded, therefore, that this sum could "buy" a 20 year loan of three hundred and sixty thousand ($360,000) dollars at an interest rate of 9.5%. The court did not find this analysis particularly useful. Mr. McCarthy made adjustments to expenses which were not based on any probative analysis. His claim that the rent paid by the business is excessive was not founded on any knowledge of the Avon real estate market, and his calculation did not incorporate any meaningful business analysis of the economics of the day care business. Finally, his notion of combining the real estate and business to postulate one value for both appears not to have considered the parties' stipulation that the real estate has a fair market value of two hundred and thirty-five thousand ($235,000) dollars. His comment that the business would have the same value even if the real estate were worth substantially more than two hundred and thirty-five thousand ($235,000) dollars did not enhance the court's ability to rely on his analysis. CT Page 6598
The defendant called Stuart Kaufman as his business appraiser. Mr. Kaufman, who is also a certified public accountant, completes the tax returns and financial statements for Pooh's Corner. He stated that the business has essentially no fair market value other than the opportunity it presents for employment. He posited a minimal value of fifteen thousand ($15,000) dollars to the business. He analyzed the value of the business by reviewing its net income and adding that sum to the agreed-value of the real estate. He also stated his belief that the salary paid to Mr. Steinberg is low for the amount of work he does. Reviewing the financial records for the past few years, Mr. Kaufman concluded that the gross business income averaged approximately seventy-one thousand ($71,000) dollars. Deducting from this amount rent of twenty-nine thousand ($29,000) dollars based on a return of twelve percent on the value of the real estate, and positing that the job of director warrants a salary of at least forty-one thousand ($41,000) dollars, Mr. Kaufman concluded that the business generates no net income. On this basis, he stated that the business alone has essentially no fair market value except as an employment vehicle.
The court found Mr. Kaufman's analysis to be fact-based and cogent. And the court agrees that the business, apart from the value or the real estate, appears to have minimal value.
During the course of the marriage, finances were an issue for the parties. Early in the marriage, the parties separated their finances. In 1989, when the defendant transferred an interest in the Indian Hill Road house to the plaintiff, the parties, with the assistance of counseling, combined finances until their separation in 1994. Thus, for part of the marriage, the parties led separate economic lives, and for another part of the marriage they pooled their finances. Since their separation in 1994, until intervening court orders earlier this year, the parties had a private financial arrangement for the payment of ongoing expenses. Otherwise, they have led separate financial lives since their separation.
With respect to the issues of child support and alimony, the court finds that the defendant's salary is approximately forty-one thousand ($41,000) dollars a year. In addition, the business pays the car lease of three hundred ($300) dollars a month for the co-director, a woman with whom the defendant is presently residing. The court heard no probative evidence that this expense is necessary for the co-director to fulfill her business functions. Thus, the court attributes the CT Page 6599 additional yearly sum of thirty-six hundred ($3,600) dollars to the defendant's income, bringing it to forty-four thousand, six hundred ($44,600) dollars. In addition, he receives rental payments of approximately thirty-one thousand, six hundred ($31,600) dollars a year. Finally, the defendant earns a approximately seven hundred ($700) dollars a year giving music lessons. For purposes of assessing the issues of child support and alimony, therefore, the court finds that the defendant's gross annual income is seventy-six thousand, nine hundred ($76,900) dollars. As noted, the plaintiff earns an annual gross salary of approximately thirty seven thousand, two hundred and eighty ($37,280) dollars. After making proper deductions for taxes and social security, and assuming that the defendant shall be entitle to claim Russell as a dependency exemption, the court finds that the parties' combined weekly net incomes are approximately fifteen hundred and seventy ($1570) dollars, generating a total child support obligation of three hundred and four ($304) dollars. The defendant's share of this obligation, approximately 64%, is approximately one hundred ninety-five ($195) dollars. The defendant points out, however, that he and the plaintiff share Russell's care equally. This arrangement justifies some deviation from Connecticut's Child Support Guidelines. Accordingly, the court orders the defendant to pay to the plaintiff, as weekly child support, the sum of one hundred and fifty ($150) dollars. The defendant shall be entitled to claim Russell as a dependency exemption so long as he is current with respect to his child support obligation on December 31st of the year for which he seeks the dependency exemption. The plaintiff is ordered to sign the documentation necessary to effectuate this order.
While Russell is a reportedly a bright and delightful child, he has had periodic health problems which have required extra care and expense by his parents. In addition, the plaintiff testified credibly that the condition of Russell's teeth suggests the future need for orthodontia. The defendant shall maintain health insurance for Russell, and the parties shall share equally any health expenses incurred for Russell either not covered by insurance or below the deductible. In this regard, the court defines the term "health" broadly, to include medical, hospital, prescriptive drug, dental, orthodontic, and emotional or psychological expenses. The parent incurring such a cost shall forward a copy of the invoice to the other parent within two weeks of receiving it, and the receiving parent shall reimburse the paying parent his or her share within two weeks of such receipt. CT Page 6600
Both parties agree that the plaintiff is entitled to alimony. The defendant proposes to pay the sum of one hundred ($100) dollars a week for five years, while the plaintiff seeks one hundred ninety-two ($192) dollars a week for nine years. In fixing the amount and term of alimony, the court has considered all the statutory criteria set forth in C.G.S. 46b-81, except that the court has determined that the cause or the marital dissolution is not a relevant factor in this case. With respect to the term of alimony, in addition to the statutory factors, the court has considered Russell's age, and the fact that once Russell is in his mid teen age years, the plaintiff's work schedule when Russell is with her should be less dependent on his needs. The court has also considered the fact that the plaintiff's career ascendancy was delayed because of her child care responsibilities while Russell was quite young. Finally, with respect to both the term and amount of alimony, the court has taken its property orders into consideration. Accordingly, the defendant is ordered to pay to the plaintiff, as weekly alimony, the sum of one hundred fifty ($150) dollars a week for a period of six years, to terminate earlier on the death of either party or the plaintiff's remarriage. The provisions or C.G.S.46b-86(b) shall apply to this order.
With the exception of the Indian Hill residence, the parties agree to the division of property. Their dispute concerns the amount of payment, if any, that should be made to the plaintiff as a property settlement. Both propose that the plaintiff should have sole title to the Lilac Lane and Woodsedge properties. The court agrees. The defendant is ordered to quit any interest he has in these properties to the plaintiff who shall assume the mortgages relating to these properties and hold the husband harmless therefrom.
With respect to the West Avon Road and Fort Lauderdale properties, the parties agree that the defendant should have their sole ownership. The court concurs. Accordingly, the plaintiff is ordered to quit claim any interest she has in these properties to the defendant who shall assume the mortgages relating to these properties and hold the wife harmless therefrom.
With respect to the Indian Hill Road property, while the defendant proposes that he should have ownership free of any claim by the plaintiff, the plaintiff proposes that she have a CT Page 6601 continuing interest as custodian for Russell. To the extent it is possible, the court believes the ownership of Indian Hill Road should become disentangled. Accordingly, the plaintiff is ordered to quit claim the share she holds in her name personally to the defendant. Additionally, she is ordered to quit claim the interest she holds as custodian for Russell to the defendant, who shall take that share as custodian for Russell. The defendant is ordered to pay the mortgage on this property and hold the plaintiff harmless therefrom. His custodianship for Russell shall continue until Russell's eighteenth birthday at which time he shall pay over to Russell an amount of money equal to three sixteenth's of the net equity of the property. Net equity shall be defined as the property's then fair market value less the principal balance of the mortgage, based on amortization of the present mortgage under it's present terms. The court shall retain jurisdiction over this property and its order relating to the custodianship for Russell in order to make any further orders which may be necessary to carry out the terms of this order.
In addition to her real property requests, the plaintiff seeks a lump sum of one hundred fifteen thousand ($115,000) dollars. In support of this claim, the plaintiff has filed a Memorandum in which she refers to many of the statutory criteria for property disposition. In addition, she claims that the "transmutation and commingling of previously separate property makes in marital." Plaintiff's Trial memorandum of Law, page 2. The plaintiff is wrong on the facts and the law. In Connecticut, marriage alone does not give one spouse and interest in the property 3 of the other spouse. To the contrary, C.G.S. 46b-36
provides, in pertinent part: "Neither husband nor wife shall acquire by the marriage any right to or interest in any property held by the other before or acquired after such marriage, except as to the share of the survivor in the property as provided by section 45a-436 and 45a-437." Connecticut is known as an equitable distribution state in which the court, at the time of marital distribution, has the authority to assign to either the husband or wife all or any part of the estate of the other. ct. C.G.S. 46b-81. In doing so, the court is required to consider the statutory criteria set forth in C.G.S. 46b-81. This the court has done. As a property settlement, the defendant shall pay the plaintiff the principal sum of forty thousand ($40,000) dollars, as follows: the principal sum or ten thousand ($10,000) dollars by September 1, 1998, and the principal sum of ten thousand ($10,000) dollars on each succeeding September 1st, for a total of four annual installments. This obligation shall be evidenced CT Page 6602 by a promissory note secured by a blanket mortgage on the Indian Hill and West Avon Road properties and bearing simple interest at the rate of 6% per annum on the unpaid balance accruing from July 1, 1998. The annual interest on the unpaid balance shall be paid at the same time as the annual principal payment. Thus, on September 1, 1998, the defendant shall pay the plaintiff the principal sum of ten thousand ($10,000) dollars in addition to three months' interest on the total sum of forty thousand ($40,000) dollars. On September 1, 1999, the defendant shall pay the plaintiff the principal sum of ten thousand ($10,000) dollars and one year's interest on the principal sum of thirty thousand ($30,000) dollars. On September 1, 2000, the defendant shall pay the plaintiff the principal sum of ten thousand ($10,000) dollars and one year's interest on the principal sum of twenty thousand ($20,000) dollars. On September 1, 2001, the defendant shall pay the plaintiff the principal sum of ten thousand ($10,000) dollars together with one year's interest on ten thousand ($10,000) dollars. The defendant may prepay the principal sum of forty thousand ($40,000) dollars, or any part thereof, at his election. In such event, he shall only have to pay interest on the unpaid principal to the date of the prepayment.
With exception to the orders relating to real estate, each party shall be entitled to sole ownership of the assets each presently possesses, and each shall sign any documentation which may be necessary to effectuate this order. Additionally, except for the orders made herein concerning payment of mortgages, each party shall be solely responsible for the liabilities listed on his and her financial affidavit and shall hold the other harmless therefrom.
All documentation required to effectuate the orders made in this Memorandum shall be executed within thirty days of this date.
Each party shall be responsible for the payment of his and her own legal fees and costs.
Judgement may enter accordingly.
Bishop, J. CT Page 6603